UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x

L.C., individually and on behalf of T.B., a mi-    :
nor,                                               :
                                                   :
                         *Plaintiff,*              :
                                                   :
            *-against-*                            :        15 Civ. 4092 (PAC)
                                                   :
THE NEW YORK CITY DEPARTMENT OF                    :
EDUCATION,                                         :        **OPINION & ORDER**
                         *Defendant.*              :
                                                   :
                                                   :
                                                   :
------------------------------------------------------------x

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: _9-6-16_

HONORABLE PAUL A. CROTTY, United States District Judge:

Plaintiff L.C. brings this action on behalf of her son, T.B., against the New York City

Department of Education (DOE). She alleges that DOE failed to provide T.B. a free appropriate

public education (FAPE) as mandated by the Individuals with Disabilities Education Act (IDEA).

She seeks full tuition reimbursement for the private school that T.B. attended during the 2013–

2014 school year. The parties submitted cross-motions for summary judgment. The Court grants

summary judgment for DOE.

## BACKGROUND

### I.    Statutory and Regulatory Framework

IDEA requires that states receiving federal funds provide all learning-disabled children

with special-education services that are "tailored to the[ir] unique needs" and "reasonably calcu-

lated to enable the[m] to receive educational benefits." *M.O. v. N.Y.C. Dep't of Educ.*, 793 F.3d

236, 238–39 (2d Cir. 2015) (per curiam) (quoting *Reyes ex rel. R.P. v. N.Y.C. Dep't of Educ.*, 760

F.3d 211, 214 (2d Cir. 2014)). A school district must create an individualized education program

1

(IEP) for each qualifying child that "sets out the child's present educational performance, establishes annual and short-term objectives for improvements . . . and describes the specially designed instruction and services that will enable the child to meet those objectives." *Id.* at 239 (quoting *R.E. v. N.Y.C. Dep't of Educ.*, 694 F.3d 167, 175 (2d Cir. 2012)). In New York, IEPs are developed by local Committees on Special Education (CSE), which comprise members appointed by the local school district's board of education and must include the student's parent(s), a regular or special education teacher, a school-board representative, a parent representative, and others. *Id.* (citing *R.E.*, 694 F.3d at 175).

Parents who believe that their child is not being provided a FAPE may unilaterally enroll their child in a private school and seek tuition reimbursement from the school district. *Id.* In New York City, parents seek reimbursement by filing a due-process complaint with DOE, which refers the matter to an independent hearing officer (IHO) for a hearing. *Id.* At the hearing, the IHO employs the familiar burden-shifting framework known as the *Burlington/Carter* test. *See id.* Under that framework, DOE has the initial burden of establishing the procedural and substantive adequacy of the IEP; failure to do so entitles the parent to reimbursement if they demonstrate "the appropriateness of their private placement," and "that the equities favor them." *Id.* (quoting *R.E.*, 694 F.3d at 184). On the basis of the hearing and any evidence adduced by the parties, the IHO makes findings of fact and renders a decision. *Id.* An aggrieved party may appeal the decision to a state review officer (SRO), who conducts an independent review of the record and may affirm, reverse, or modify the IHO's decision. *See Grim v. Rhinebeck Cent. Sch. Dist.*, 346 F.3d 377, 379–80 (2d Cir. 2003). The SRO's decision may be challenged in a civil action in state or federal court. *M.O.*, 793 F.3d at 239 (citing 20 U.S.C. § 1415(i)(2)(A); N.Y. Educ. Law § 4404(3)); *see also Forest Grove Sch. Dist. v. T.A.*, 557 U.S. 230, 232 (2009) ("[W]hen a public school fails to provide

a FAPE and a child's parents place the child in an appropriate private school without the school district's consent, a court may require the district to reimburse the parents for the cost of the private education.").

## II.    Facts

L.C.'s son, T.B., has autism. Exh. C. He has difficulties with expressive language and at age five was only speaking in one- to two-word phrases. *Id.* During the 2012–2013 school year, T.B. was placed in a prekindergarten class with a 8:1:2 staffing ratio (*i.e.*, eight students, one teacher, and two paraprofessionals) along with an individual one-on-one paraprofessional pursuant to an IEP. Tr. 133; Exh. 7. For the 2013–2014 school year, DOE convened a CSE to develop a new IEP for T.B., which is standard for students turning five. Tr. 134; Exhh. 1, 7–8. In an IEP dated July 15, 2013, the CSE recommended a 6:1:1 program (*i.e.*, six students, one teacher, and one paraprofessional) with the additional support of a fulltime one-on-one crisis-management paraprofessional.[1] Exh. C. Of the many goals set forth in the IEP, several explicitly or implicitly relate to fostering T.B.'s ability to interact with his peers using expressive language:

> [T.B.] greets peers. But does not ask for objects from them. He is working on sharing toys and appropriately rejecting objects. Exh. C at 1.

> [T.B.'s] teacher reported that [he] will greet familiar adults but needs to be prompted to greet his peers and initiate play. *Id.* at 2.

> Speech Goal: Within one year [T.B.] will increase his pragmatic language skills by greeting peers appropriately, responding verbally to others when spoken to and improving eye contact when speaking to others. *Id.* at 5.

> Speech Goal: Within one year [T.B.] will engage in verbal interaction involving 2–3 verbal exchanges with a familiar adult or peer. *Id.*

---

[1] This was the fourth IEP prepared by the CSE in a process that took several months. Ex. 11–12, 15–19. The other IEPs were not finalized, did not result in a placement, and are not at issue here.

Speech Goal: Within one year [T.B.] will improve expressive language skills by appropriately requesting or rejecting items using his words. *Id.* at 6.

On August 30, 2013—ten days before the beginning of the school year—DOE sent a final notice of recommendation to L.C., informing her that T.B.'s proposed school placement was 75K711@21K329 (PS 771). On September 16, 2013, L.C. visited PS 771 and observed a 6:1:1 class. Exh. E at 3. Two days later, she sent the CSE a letter stating that she believed PS 771 was unsuitable for T.B. *Id.* In particular, she noted that (1) no language was used in the classroom she observed; (2) the teachers and paraprofessionals did not have control of the classroom; (3) the classroom used applied behavior analysis (a teaching method for students with autism); (4) the peer grouping was inappropriate; (5) the classroom day consisted of English language arts, lunch, and science; (6) only one child in the classroom was verbal and spoke English; (7) the speech-therapy room was small and did not use any language; (8) and the adaptive-physical-education classroom consisted of children getting up and down from chairs. *Id.* L.C. conceded in her letter that she had visited only one of the two 6:1:1 classes offered at PS 771. *See id.*

The CSE never responded to L.C.'s letter, and on October 15, 2013, L.C. notified the CSE that T.B. would attend the Cooke Center, a private school for special-needs children, for the remainder of the 2013–2014 school year. Exh. E at 5.

## III.   Proceedings

On October 30, 2013, L.C. sought tuition reimbursement from DOE by filing a due-process complaint with the school district. In her complaint, L.C. challenged the substantive adequacy of the IEP and the adequacy of DOE's proposed placement, PS 771. Exh. A. A hearing was held on the merits at which L.C. reiterated many of the objections she had raised in her letter to the CSE, including that she "did not observe any language being used in the class" and that she was told by the teacher that "only one of the students was verbal; but that he was [no] longer going to be in the

4

program." Hearing Officer's Finding of Fact and Decision, Case No. 148320 [hereinafter IHO Decision], at 7. IHO Dora Lassinger awarded tuition reimbursement to L.C. *Id.* at 15. The IHO determined that T.B.'s IEP was substantively adequate; but since the school district had not presented any evidence that PS 771 was capable of implementing T.B.'s IEP, DOE had failed to carry its burden on the first requirement of the *Burlington/Carter* test:

> The DOE failed to present any evidence that the recommended program could be implemented at the recommended site, as required by [*D.C. ex rel. E.B. v. N.Y.C. Dep't of Educ.*, 950 F. Supp. 2d 494 (S.D.N.Y. 2015), and *T.Y. v. N.Y.C. Dep't of Educ.*, 584 F.3d 412 (2d Cir. 2009)]. Furthermore, the DOE failed to prove that [T.B.] would be appropriately grouped at the recommended site, as required by 8 NYCRR 200.6(a)(3)(i). Mr. Tabone testified that the 6:1:1 (District 75) program recommended by the DOE is not appropriate for [T.B.] because the program is designed for students with autism and language impairments. He testified that [T.B.] is very capable of academic progress and social development within a group of students who can reciprocate language and learning events.
>
> The parent's observation of the recommended site is consistent with Mr. Tabone's testimony. [L.C.] testified that she did not observe any language being used in the class. The teacher stated that only one of the students was verbal; but that he was [no] longer going to be in the program.
>
> Based upon the DOE's failure to present any evidence that the IEP could be implemented at the recommended site, or regarding the appropriateness of the grouping at the recommended site; and based upon the testimony of Mr. Tabone and [L.C.], that [T.B.] would not be appropriately grouped at the recommended site, I find that the DOE failed to meet its burden of proving the appropriateness of the recommended site.

*Id.* at 13–14.

DOE appealed the IHO's finding that the recommended placement was inappropriate, arguing that L.C.'s claim was barred because challenges to a recommended placement are "inherently speculative where the student does not attend the placement." Verified Pet. ¶ 50. (citing *R.E.*, 694 F.3d at 195). L.C. answered the petition and cross-appealed the IHO's determination that T.B.'s IEP was substantively appropriate.[2] *See* Verified Answer and Cross Appeal 17–20. She

---

[2] L.C. has abandoned her substantive challenge to the IEP's adequacy here.

further asserted that DOE's placement recommendation was untimely, which she claimed denied

T.B. a FAPE "on its face." *Id.* at 11–12.

In a decision dated March 13, 2015, SRO Carol H. Hauge reversed the IHO's finding that

DOE failed to offer T.B. a FAPE for the 2013–2014 school year. Decision No. 14-080 of the State

Review Officer [hereinafter SRO Decision] at 13. The SRO affirmed the IHO's determination that

T.B.'s IEP was substantively reasonable and rejected L.C.'s contention that DOE's recommended

placement was untimely. *See id.* at 5–11. As for L.C.'s challenge to the appropriateness of the

proposed placement, the SRO concluded that because

> the student never attended the assigned public school site pursuant to the July 2013
> IEP, any conclusion that the district would not have implemented the student's IEP
> or that the student would not have been appropriately functionally grouped—based
> on the parent's observations during a visit to the assigned public school site—would
> necessarily be based on impermissible speculation.

*Id.* at 11–12 (citations omitted).

L.C. thereafter timely filed this action challenging the SRO's decision. *See* 20 U.S.C.

§ 1415(i)(2)(A).

## STANDARD OF REVIEW

"The role of the federal courts in reviewing state educational decisions under the IDEA is

circumscribed." *C.F. ex rel. R.F. v. N.Y.C. Dep't of Educ.*, 746 F.3d 68, 77 (2d Cir. 2014) (quoting

*Gagliardo v. Arlington Cent. Sch. Dist.*, 489 F.3d 105, 112–13 (2d Cir. 2007)). Although the stand-

ard of review on a motion for summary judgment "requires a more critical appraisal of the agency

determination than clear-error review," it "nevertheless falls well short of complete de novo re-

view." *Id.* (quoting *M.H. v. N.Y.C. Dep't of Educ.*, 685 F.3d 217, 244 (2d Cir. 2012)). While the

Court must "base its decision on the preponderance of the evidence, it must give due weight to the

administrative proceedings, mindful that the judiciary generally lacks the specialized knowledge

and experience necessary to resolve persistent and difficult questions of education policy." *M.O.*, 793 F.3d at 243 (quoting *A.C. ex rel. M.C. v. Bd. of Educ.*, 553 F.3d 165, 171 (2d Cir. 2009)). As such, "determinations regarding the substantive adequacy of an IEP should be afforded more weight than determinations concerning whether the IEP was developed according to the proper procedures." *M.H.*, 685 F.3d at 244.

Where the IHO and SRO disagree, "reviewing courts are not entitled to adopt the conclusions of either state reviewer according to their own policy preferences or views of the evidence; courts must defer to the reasoned conclusions of the SRO as the final state administrative determination." *Id.* at 246. The degree of deference courts afford the SRO's and IHO's decisions "hinge[s] on the kinds of considerations that normally determine whether any particular judgment is persuasive, for example whether the decision being reviewed is well-reasoned, and whether it was based on substantially greater familiarity with the evidence and the witnesses than the reviewing court." *Id.* at 244.

## DISCUSSION

L.C. claims that her son was denied a FAPE for two reasons. First, DOE's final notice of recommendation is said to be untimely, but this claim is not supported by the record. "[T]he IDEA and New York law 'only require[] that a school district have an IEP in effect at the *beginning* of the applicable school year.'" *N.K. v. N.Y.C. Dep't of Educ.*, 961 F. Supp. 2d 577, 590 (S.D.N.Y. 2013) (citations omitted) (alteration and emphasis in original); *see also S.F. v. N.Y.C. Dep't of Educ.*, No. 11 Civ. 870, 2011 WL 5419847, at *12 (S.D.N.Y. Nov. 9, 2011) ("The courts in this District have found that 'an education department's delay [in sending an FNR] does not violate the IDEA so long as the department still has time to find an appropriate placement for the begin-

7

ning of the school year in September.'" (alteration in original)). The final notice of recommendation was dated August 30, 2013, ten days before the projected implementation date of T.B's IEP. The notice was timely.[3]

Second, L.C. claims that PS 771 was an inadequate placement. The Court recently considered a similar prospective challenge to a proposed placement school in *W.W. & D.C. ex rel. M.C. v. N.Y.C. Dep't of Educ.*, No. 14 Civ. 9495, 2016 WL 502025 (S.D.N.Y. Feb. 8, 2016) (Crotty, J.). Relying on the Second Circuit's decision in *M.O. v. N.Y.C. Dep't of Educ.*, 793 F.3d 236 (2d Cir. 2015) (per curiam), the Court held that "plaintiffs may prospectively challenge a proposed placement school's capacity to implement an IEP without first enrolling their child in that school." *W.W.*, 2016 WL 502025, at *7 (citation omitted). And if the parent states a permissible prospective challenge, "the school district bears the burden of showing that the proposed placement school has the capacity to implement the child's IEP." *Id.* (citation omitted). The question here is whether L.C. states a permissible challenge to PS 771's *capacity* to implement T.B.'s IEP. If so, she is entitled to reimbursement because DOE failed to put on any evidence that PS 771 was capable of implementing T.B.'s IEP and thus failed to carry its burden. *Cf. id.* at *7–8. But if L.C.'s challenge presents mere speculation that PS 771 would choose not to implement T.B.'s IEP—despite having the capacity to do so—then DOE was not required to adduce any evidence to rebut that claim, and L.C. is not entitled to reimbursement. *Cf. M.O.*, 793 F.3d at 245.

L.C.'s moving papers focus on the IEP's speech goals. She argues that PS 771 could not satisfy the IEP's recommendation that T.B. interact verbally with appropriate peers because the

---

[3] L.C.'s arguments to the contrary fail. The notice provided L.C. sufficient time to visit the proposed placement. And any missed deadlines can be attributed to the CSE's attempt to craft an IEP for T.B. that satisfied L.C.'s concerns. Indeed, the CSE went through three iterations of T.B.'s IEP before the July 15, 2013 IEP was finalized. It would be unfair—and disserve the IDEA's policy goals—to fault DOE for its attempts to accommodate L.C.'s objections.

students she observed were nonverbal or not English speakers. Pl. Mem. at 15–18. The Court notes

that if T.B. were in fact placed in a classroom that did not afford him the opportunity to interact

with peers as required in his IEP, he would be denied a FAPE. But T.B. never attended PS 771.

Any speculation about which students T.B. would have been grouped with had he attended PS 771

is just that—speculation. And speculation is not a sufficient basis for a prospective challenge to a

proposed school placement. *See M.O.*, 793 F.3d at 245.

The Court's decision in *W.W.* is instructive. In *W.W.*, as here, the parent visited the school

and observed a classroom. 2016 WL 502025, at *2. But that classroom observation was not the

sole basis for the parent's objection to the proposed placement school; rather, the parent was told

by a school administrator that the school could not offer some of the classes mandated in her son's

IEP. *See id* at *2, *8. The Court thus concluded that the parent's prospective challenge was per-

missible because it challenged the school's capacity to implement the student's IEP. *Id.* at *8–9.

In contrast, here, L.C.'s objections are based entirely on her observation of one of the two 6:1:1

classes at PS 771 and her mere speculation that T.B. would have been grouped with the students

she observed.[4] But no school administrator told her that PS 771 was unable to implement T.B.'s

IEP or that he would have been grouped with students who would not have afforded him adequate

opportunities to develop his expressive-language abilities. Speculation along those lines is insuf-

ficient to raise a prospective challenge to a proposed school placement. *Cf. N.K. v. N.Y.C. Dep't*

*of Educ.*, No. 15 Civ. 1468, 2016 WL 590234, at *7 (S.D.N.Y. Feb. 11, 2016) ("Just as it was

'speculati[ve]' to argue that the student would be 'underserved' if he were to attend the proposed

---

[4] At the hearing before the IHO, L.C. testified that she observed the classroom where T.B. would be placed. Tr. 153–57. But this testimony is inconsistent with her letter to the district, in which she acknowledged that PS 771 has two 6:1:1 classes and that she only saw one of them. Exh. E at 3. That letter does not state that she observed the actual class in which T.B. would be placed.

9

placement school in *R.E.*, so too is it 'speculati[ve]' to argue that the Student would be in class with unsuitable classmates. . . . Whether or not the Student is grouped in a class that is inappropriate for his IEP cannot be known at the time of the parent's placement decision." (brackets in original)). Accordingly, DOE was not required to adduce any evidence regarding the appropriateness of its recommended school placement, PS 771. *Cf. M.O.*, 793 F.3d at 245.

## CONCLUSION

The Court agrees with the SRO's determination that L.C.'s argument that the placement school would not have implemented T.B.'s IEP or that T.B. would not have been appropriately functionally grouped is based in speculation. Accordingly, the Court GRANTS summary judgment in defendant's favor and DENIES plaintiff's cross-motion. The Clerk is directed to enter judgment for DOE and to close Case No. 15 Civ. 4092.

Dated: New York, New York
      September 6, 2016

SO ORDERED

PAUL A. CROTTY
United States District Judge

10